# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1849

_____

Marina Palavra, Danijel Palavra,     *
Vlado Palavra, and Brankica Palavra,   *
                                   *
       Petitioners,            *
                                   *   On Petition for Review
      v.                    *   of a Decision of the Board
                                   *   of Immigration Appeals.
                                   *
Immigration and Naturalization      *
Service,                            *
                                   *
       Respondent.          *

_____

Submitted: February 15, 2002
Filed: April 18, 2002

_____

Before HANSEN, Chief Judge, HEANEY and RICHARD S. ARNOLD, Circuit
     Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

     This is a deportation[1] case. The Board of Immigration Appeals has ordered the
petitioners, Vlado Palavra and his family (his wife, Marina, his daughter, Brankica,

_____

[1] We use the word "deportation" rather than the new term, "removal," because,
as the parties agree, this case is governed by the Immigration and Nationality Act, 8
U.S.C. §§ 1101-1557 (1994), as it existed before amendments made by the Illegal
Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208,
110 Stat. 3009, as amended by Pub. L. No. 104-302, 110 Stat. 3656.

and his son, Danijel), deported to Croatia. In addition, the Board refused to consider petitioners' applications for asylum from Bosnia-Herzegovina. The Palavras lived in Bosnia before coming to the United States. They entered this country in 1995 on passports issued by the government of Croatia and on visas issued by the United States Consul in Croatia, as nonimmigrant visitors for pleasure for a limited amount of time. They stayed beyond the time prescribed. In 1996 deportation proceedings were begun. Petitioners conceded that they were deportable, but denied that they were citizens of Croatia. They have claimed asylum from Bosnia, asserting that they had a well-founded fear of persecution in that country if forced to return there. They declined to designate a country of deportation. An immigration judge, noting that the petitioners' passports from Croatia were indicia of Croatian citizenship, refused to consider their applications for asylum, noting that the government sought to deport them to Croatia, not Bosnia, and that they had expressed no fear of returning to Croatia. Accordingly, the judge granted petitioners' request for voluntary departure in six months.

Petitioners then asked the immigration judge to reconsider his decision. To their motion they attached an affidavit of the father, Vlado Palavra, attempting to explain how they obtained Croatian passports. The content of this affidavit will be discussed later in this opinion, as relevant. The motion to reconsider was denied.

On appeal to the BIA, the action of the immigration judge was affirmed. The judge's finding that the Palavras are citizens and nationals of Croatia, the BIA said, was supported by the record. In addition, the BIA concluded that the immigration judge had correctly refused to consider the petitioners' application for asylum, when the country of deportation was properly designated as Croatia, a country in which they do not claim a well-founded fear of persecution.

Petitioners now seek review in this Court of the decision of the Board of Immigration Appeals. We must affirm the BIA's findings of fact if they are supported

by substantial evidence. Escudero-Corona v. INS, 244 F.3d 608, 612 (8th Cir. 2001); 8 U.S.C. § 1105a(a)(4) (1994) (repealed 1996). The factual finding contested here is the finding that petitioners were citizens, nationals, or subjects of Croatia, and not of Bosnia-Herzegovina. In addition, petitioners assert that the Board erred in refusing to consider their request for asylum. The assertion, as we understand it, is that the asylum statute, 8 U.S.C. § 1158(a), requires the Board to consider the petition for asylum, and, in particular, to make a finding as to whether petitioners have a well-founded fear of persecution if forced to return to Bosnia. The Board held, on this point, that it did not have to consider the petition for asylum because the Palavras were to be returned to Croatia, not Bosnia, and there was no claim of persecution in Croatia.

As we have said, petitioners decline to designate a country of deportation. In this situation, the Attorney General is authorized to direct deportation "to any country of which such alien is a subject, national, or citizen if such country is willing to accept him." 8 U.S.C. § 1253(a) (1994). The Immigration and Naturalization Service argues that the BIA's finding that petitioners are Croatians is supported by substantial evidence. They point out that petitioners entered this country on Croatian passports. Passports are evidence of citizenship, but they are not conclusive. They "may be overcome by sufficient evidence that the holder of the passport is not a citizen" of the issuing country. Matter of MacCaud, 14 I&N Dec. 429, 431 (1973). The parties agree that the presumption of citizenship based upon an alien's possession of a passport from a given country may be overcome by sufficient evidence to the contrary.

The BIA noted, in addition to the Croatian passports, that petitioners obtained visas to travel to the United States by indicating Croatian citizenship and stated on their asylum applications that they were Croatian nationals (except that Mrs. Palavra said she was Bosnian). In addition, petitioners have referred to themselves as Croatian nationals from time to time in the past. The BIA stated that petitioners had

presented no evidence to indicate that the passports are invalid "or in some way indicate anything less than full nationality and citizenship." On this basis, the BIA found that petitioners are Croatian nationals, and that they must be deported to Croatia, where they fear no persecution. The application for asylum from Bosnia, thus, becomes, in a sense, moot. In any event, the Board did not pass on it.

The main question presented is whether the finding of the Board of Immigration Appeals that the Palavras are citizens, nationals, or subjects of Croatia is supported by substantial evidence. Portions of the record support the BIA's finding. A reading of the BIA's opinion, however, convinces us that significant parts of the record were not considered. Accordingly, we remand the case to the BIA for reconsideration in conformity with the views expressed in this opinion.

No doubt the use of Croatian passports is evidence in support of the position taken by the BIA. All sides agree, however, that the passports are not conclusive. Their apparent effect — that their holders are citizens of Croatia — can be rebutted by other evidence. The BIA's opinion states that the Palavras "have presented absolutely no evidence that the passports are not valid or in some way indicate anything less than full nationality and citizenship of Croatia." In re Vlado Palavra, Nos. A73 411 554, A73 401 939, A73 400 181, A73 400 180, p. 2 (opinion filed March 21, 2001).

We can accept that the Croatian passports are "valid," and that there is no reason to suppose that they are not. There is considerable evidence in this record, however, "indicat[ing] [some]thing less than full nationality and citizenship of Croatia." The INS itself, in the order to show cause, says that Danijel is a Bosnian citizen. In addition, Mr. Palavra's affidavit, which was presented to the Immigration Judge and was in the record before the BIA, explains the issuance of the Croatian passports in some detail. According to the affidavit, which we have no reason to disbelieve at this point, all four of the Palavras were born in and lived in that part of

-4-

Yugoslavia that is now Bosnia-Herzegovina. The family had lived there at least four generations. None of them had ever lived in Croatia, although they are ethnic Croatians. They wanted to come to the United States to get treatment for an eye condition for their son Danijel. They were not able to obtain passports from the government of Bosnia-Herzegovina because of "the strained situation between the ethnic Croats, which we were and are, and the Bosnian government and the majority ethnic group living in and controlling the Bosnian government . . .." Appendix 28. They sent their daughter Brankica with an aunt to Croatia, and with the intervention of a government official, in a few days, "Croatian passports were issued to us . . .." Ibid. They owe no loyalty or allegiance to the country of Croatia, and have no connection to it either by residence or oath.

The affidavit explains that Croatian passports were issued to the Palavras as a humanitarian accommodation by the government of a country with which they had ethnic identification. We are at a loss to explain the statement of the BIA that this evidence in no way indicates anything less than full nationality and citizenship of Croatia. It seems to us that that is precisely what it indicates.

In reviewing decisions by administrative agencies, we are mindful that it is the agency that is charged with the initial fact-finding function. In reviewing district courts, we may affirm the judgment on any basis disclosed in the record, whether or not the district court agreed with or even addressed that ground. Judicial review of administrative agencies is approached differently. If, for example, an agency decides a case on a ground believed by an appellate court to be wrong, the case has to be remanded to the agency. "[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." SEC v. Chenery Corp., 318 U.S. 80, 95 (1943). In reviewing a finding of fact under the substantial-evidence standard, the reviewing court "must take into account whatever in the record fairly detracts from [the] weight" of the evidence that supports the finding. Universal Camera Corp. v. NLRB, 340 U.S.

-5-

474, 488 (1951). When an agency finds a fact without mentioning or analyzing significant evidence, the agency needs to reconsider its decision.

Hernandez v. Reno, 258 F.3d 806, 814 (8th Cir. 2001), is an analogous case. Hernandez, a Guatemalan, sought asylum on the basis of anticipated persecution. Hernandez had been part of a group of guerrillas, some of whom, at least, had deliberately killed civilians. Hernandez claimed that he became part of this group unwillingly, but that he knew he would be killed if he did not comply with orders. The Board of Immigration Appeals held that Hernandez was statutorily ineligible for the relief of asylum because he had " 'assisted or otherwise participated in the persecution of [a] person on account of . . . political opinion.' " Id. at 811 (quoting INA § 101(a)(42)). The Board therefore did not reach the question whether Hernandez had a well-founded fear of persecution if deported back to Guatemala.

On appeal, this Court determined that the BIA had failed to consider significant evidence relevant to Hernandez's culpability:

> The fact that Hernandez had been involved in the shooting in Playa Grande [the place where the guerrillas shot the civilians] was held by the Board to be "adequate to indicate" that he had assisted in persecution. Without mentioning or analyzing other significant evidence that was relevant to Hernandez's culpability, it concluded that he had not met his burden of proving that he had not participated in persecution and that he was therefore ineligible for asylum and withholding of deportation.

Hernandez, 258 F.3d at 814. In our view,

> the Board omitted most of the facts in the record from its legal analysis. It did not consider Hernandez's uncontroverted testimony that his involvement with [the

-6-

guerrillas] was at all times involuntary and compelled by threats of death and that he shared no persecutory motives with the guerrillas. Nor did it discuss Hernandez's testimony that he participated in the Playa Grande action in fear for his life, that the commander stood behind him during the shooting and checked the magazine of his rifle afterwards, that immediately after the incident he expressed his disagreement with [the guerrillas'] actions to his commander, and that at the first available opportunity he risked his life to escape the guerrillas. It focused only on his being part of the group that shot at the villagers.

Ibid.

We think the present case is even clearer than Hernandez. Here, the Board did not merely fail to discuss Mr. Palavra's affidavit. It appeared to ignore it completely, by stating that there was absolutely no evidence to rebut the presumption created by the Croatian passports. The Board, of course, might, for some reason, disbelieve Mr. Palavra. It might believe the evidence but, after weighing it with all of the other evidence of record, conclude that it is insufficient. But neither of these events has occurred. Instead, we have only the bald statement that the Palavras have presented "absolutely no evidence." In these circumstances, we conclude that the BIA has failed to perform its fact-finding function, and that this case is not ripe for appellate review. To deport the Palavras to Croatia, though it ultimately may be the result of this case, is a step of great significance in their lives. They and we deserve a better brand of fact-finding by the BIA before this step can be judicially approved.

The Palavras press a separate contention. As we understand it, they argue that, even if they are found deportable to Croatia under 8 U.S.C. § 1253(a), they have a statutory right to an asylum determination, which would include a determination of their country of nationality under the Refugee Act. 8 U.S.C. § 1101(a)(42)(A). We do not reach that issue.

-7-

The order of the BIA, finding the Palavras to be Croatian nationals, is vacated, and this case is remanded to the Board for further consideration consistent with this opinion.

It is so ordered.

HANSEN, Chief Judge, dissenting.

I respectfully dissent. In my opinion, the decision of the BIA that the Palavras are Croatian citizens or nationals is supported by substantial evidence in the record and should be affirmed.

The court's decision today remands this case to the BIA for reconsideration after concluding that the BIA failed to consider significant portions of the record. I respectfully disagree with the court's view of the record. The only evidence that this court indicates the BIA overlooked was one affidavit by the father. This affidavit was not presented at the hearing before the immigration judge. Instead, it was subsequently attached to a motion to reconsider filed before the immigration judge and to a motion for remand submitted to the BIA, without any assertion that the affidavit contained new evidence that could not have been discovered or presented at the hearing, as required by federal regulations. See 8 C.F.R. § 3.2 (1994) (stating a motion to reopen for additional evidence filed with the BIA must state new facts that were not available and could not have been discovered at the former hearing); 8 C.F.R. § 103.5(a)(3) (1994) (stating a motion to reconsider filed with the immigration court must state the reasons for reconsideration and be supported by pertinent precedent decisions). The motions in this case asserted that the immigration judge misapplied the law and refused to hear evidence on the asylum claim.

Substantively, the father's affidavit asserts that he and his family were born in Bosnia, lived there all of their lives, and owe no duty of loyalty or allegiance to

Croatia. He also explained that he sent his daughter to Croatia where she obtained the Croatian passports from a government official. The affidavit does not assert that the daughter lied about her citizenship or nationality in order to obtain the passports. Although the family resided in what is now called Bosnia and was unable to obtain a passport from the new Bosnian government, the affidavit does not, in my opinion, provide evidence demonstrating that the Croatian passports indicate something less than full Croatian citizenship, as the court finds today. The assertions in the affidavit, even when taken as true, simply are not sufficient to rebut the presumption of citizenship created by the Croatian passports and the family's own admissions of Croatian citizenship.

The record is replete with instances of statements by the Palavras that they are ethnic Croatians and are either Croatian nationals or citizens, though they also indicate that they were born in and resided in what is now Bosnia. Most specifically, in their applications for asylum, both the father and mother state independently that their spouse and children are "citizens" of Croatia. (Petitioners' App. at 6, 10.) A person can possess dual nationality or dual citizenship. The affidavit's assertion that the family resided in what is now Bosnia and has no family or friends in Croatia no doubt establishes significant ties to Bosnia, but does nothing to rebut their Croatian citizenship as evidenced by the lawfully obtained valid passports and their own admissions.

Accordingly, I would affirm the BIA's decision that the Palavras are Croatian citizens or nationals as supported by substantial evidence in the whole record. In light of that conclusion, I would also find no abuse of discretion in the INS's refusal to consider the Palavras' petition for asylum from Bosnia. The possible fact of dual nationalism or citizenship does not prevent the INS from deporting the Palavras to the country that issued them valid passports and to which the family expresses no fear of returning. See Wong v. Ilchert, 998 F.2d 661, 663 (9th Cir. 1993).

A true copy.

Attest:

    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.