

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-2004

# Walker v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4145

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Walker v. Atty Gen USA" (2004). *2004 Decisions*. Paper 137.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/137

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-4145
_____

OWEN DENNES WALKER

Petitioner

v.

JOHN ASHCROFT,
Attorney General of the United States,

Respondent.

_____

On Petition for Review of an Order of Removal
from the Board of Immigration Appeals
U.S. Department of Justice
Executive Office for Immigration Review
(BIA No. A77-625-878)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 29, 2004

_____

Before: NYGAARD, AMBRO and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: November 9, 2004)
_____

OPINION
_____

Garth, Circuit Judge:

Petitioner Owen Dennes Walker[1] challenges a final order of the Board of Immigration Appeals ("BIA") denying his application for asylum and withholding of removal. In so ruling, the BIA affirmed without opinion the finding of the Immigration Judge ("IJ") that Walker was not a citizen of Liberia as he claimed and thus not entitled to asylum based on his alleged persecution in that country. We have jurisdiction under 8 U.S.C. § 1252. We will deny the Petition for Review.

## I.

Because we write exclusively for the benefit of the parties, we will recount only those facts relevant to the issues before us. Walker entered the United States on March 27, 1999, pursuant to a Guinean passport, and a temporary visa issued by the United States consulate in Conakry, Guinea, which authorized him to remain in this country until September 26, 1999. Both the passport and visa were issued in the name of Moussa Cherif.

On or about December 22, 1999, Walker filed an application for asylum under the name of Owen Dennes Walker. In his application, Walker claimed that he was a native and citizen of Liberia and that he had been a refugee without status in Guinea from December 1991 until March 1999. On March 17, 2000, the INS filed a Notice to Appear,

---

[1] The Court recognizes that the identity of the petitioner is an issue before us on appeal. However, for convenience and because the case caption refers to the petitioner as "Owen Dennes Walker," we will refer to him as Walker.

charging Walker with overstaying his visa and with removability under Section 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B). It further alleged that Walker was a native and citizen of Guinea. Walker denied that he was a native and citizen of Guinea but otherwise conceded removability. He renewed his application for asylum.

Walker appeared before the IJ at a master calendar hearing on April 27, 2000. In support of his asylum application, Walker submitted a purported Liberian birth certificate in his name.[2] However, a report from the INS Forensics Document Laboratory advised that the certificate was counterfeit. In response, Walker testified that he had a receipt for the birth certificate and that he had witnesses who would testify he was Liberian. At the same time, the forensics report concluded that the Guinean passport issued in the name of Moussa Cherif was authentic and that there was no evidence that the passport had been altered. Walker stated he used the name Moussa Cherif for the first time when he applied for a visa at the United States consulate in Guinea, and that he had made the name up. Finding that the documentary evidence indicated Walker was Guinean rather than Liberian, and noting that Walker had not advanced any claim that he would be mistreated if he were deported to Guinea, the IJ scheduled a merits hearing limited to the issue of Walker's nationality and citizenship.

A merits hearing was held on June 7, 2000. At the hearing, Walker testified that he was born in Liberia on April 11, 1969. He stated that the Liberian birth certificate

_____

[2] Walker also submitted a purported high school diploma from Liberia. The INS was unable to authenticate that document.

submitted in connection with his asylum application was a copy of the original and that he had the original in his possession. Walker testified that in 1999 he asked a friend in Liberia named Lie Moussa to obtain Walker's Liberian birth certificate on his behalf. In response to his counsel's question as to how Lie Moussa obtained the original certificate, Walker explained that, "he told me he went, I wasn't there, but he told me when at the foreign ministry, for me to be sure, he send me the receipt with him." He testified that he had no other documentary proof that he was Liberian other than the birth certificate and high school diploma.

Walker next testified concerning his Guinean passport. He stated that he obtained the Guinean passport and United States visa with the help of an individual from Guinea named Seku Bah, the father of a friend. According to Walker, he lived with Bah for seven years during the time he was a non-documented refugee in Guinea. He testified that he accompanied Bah to the United States consulate, but did not participate in any of the conversations between Bah and the consulate employee because they were held entirely in French. Walker stated on cross-examination that he did not know how Seku Bah obtained the Guinean passport, or what proof he had presented to the Guinean authorities to prove that Walker was a citizen of Guinea. When he was asked why he had not submitted a statement or letter from Bah in support of his application, Walker replied that he did not know Bah's address.

Two witnesses testified on Walker's behalf. Zeline Pritchard testified that she was

-4-

Walker's aunt and that Walker was born in Liberia. As proof of her own Liberian citizenship, she submitted her Liberian birth certificate and a diplomatic passport. She testified that she was not in Liberia at the time of Walker's birth because she was living in California. She further testified that she first saw him in September 1975, that she last saw him in Liberia in June 1990 and first saw Walker in the United States in May 2000. When asked how she could be sure that the petitioner and Owen Walker were the same person, Pritchard replied, "Your blood, you can tell anywhere, you can recognize it." She stated that she had no photographs of herself with Walker in Liberia because any such photographs were lost when her family home in Liberia was destroyed.

Fanta Sherif also testified in support of Walker. She stated that she was born in Liberia in 1970 and that she and Walker attended Painseville Community School together as small children in 1982. She also testified that she frequently saw Walker at the home of his aunt, Zeline Pritchard, until 1990. Like Pritchard, Sherif stated that she had not seen Walker from 1990 until May 1999 after he arrived in the United States. When asked how she knew Walker was Liberian, Sherif explained it was because of his name and his behavior, particularly the way he spoke English.

At the conclusion of the hearing, the IJ found that Walker was a native and citizen of Guinea, as alleged in the Notice to Appear. The IJ summarized the testimony of Walker, Pritchard, and Sherif. He found Walker's explanation of how he obtained his Guinean passport implausible. The IJ opined that Walker's testimony that Seku Bah, a

native from Liberia who spoke English, spoke in French rather than English to the consular officer, "does not make any sense to the Court." The IJ also noted that Walker's aunt, Zeline Pritchard, did not know which high school Walker attended nor did she know where he was living in 1991. Moreover, Sherif was "shaky" in her testimony.

The IJ then turned to the documentary evidence:

> The results of the lab report and lab examination are that the respondent's Liberian birth certificate is a counterfeit. The respondent has not given the Court any explanation as to why he is submitting a counterfeit document to this tribunal, he only states that his friend mailed it to him. In the four months that have past since the forensic document report was issued, the respondent has not made any attempt to get any other documentation to show that he was born in Liberia. On the other hand, the Guinea passport and the U.S. visa contained in that passport which were used to enter the United States are genuine documents according to the forensic document laboratory report. The respondent has given no explanation to the Court as to how he was able to obtain these documents which are legitimate bonafide documents, other than stating that his father's friend Seku Bah arranged for everything.

The IJ concluded that "based on the evidence of record" Walker was a native and citizen of Guinea. In making that determination, the IJ cited to the BIA's holding in *Matter of O-D-*, 21 I. & N. Dec. 1079 (BIA 1998):

> [T]he presentation by an asylum applicant of an identification document, that is found to be counterfeit by forensic experts, not only discredits the applicants claim as to the critical elements of identity and nationality, but in the absence of an explanation or rebuttal also indicates an overall lack of credibility regarding the entire claim.

Because Walker had only applied for asylum and withholding of removal from Liberia, and had made no claim of fearing persecution in Guinea, the IJ denied his applications.

The IJ also denied Walker the discretionary relief of voluntary departure in lieu of removal, on the ground that Walker had intentionally lied about his nationality and therefore lacked the requisite good moral character to qualify for such relief. Accordingly, the IJ ordered Walker be removed to Guinea.

The BIA affirmed the IJ's decision without opinion. Walker timely filed this Petition for Review.

## II.

Where, as here, the BIA affirms the IJ's decision without opinion, the opinion of the IJ constitutes the final agency determination for purposes of our review. 8 C.F.R. § 1003.1(e)(4)(2003); *Dia v. Ashcroft*, 353 F.3d 228, 242 (3d Cir. 2003) (en banc). We review adverse credibility determinations for substantial evidence. *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998). Under this deferential standard of review, we must uphold the credibility determination of the BIA or IJ unless any "reasonable adjudicator would be compelled to conclude the contrary." 8 U.S.C. § 1252(b)(4)(B).

For Walker to prevail, then, the evidence of credibility must be so strong in his favor that in a civil trial he would be entitled to judgment on the credibility issue as a matter of law. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (holding that BIA's decision can be reversed only where a petitioner's evidence "compels" a reasonable factfinder to find in his favor). That said, adverse credibility determinations "based on speculation or conjecture, rather than on evidence in the record, are reversible."

*Dia*, 353 F.3d at 249 (quoting *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002)).

In finding Walker to be a citizen and native of Guinea, and hence ineligible for asylum and withholding of deportation to Liberia, the IJ's determination was based primarily on the documentary evidence, *i.e.*, the counterfeit Liberian birth certificate and the authentic Guinean passport. We conclude, after reviewing the record as a whole, that the record evidence does not compel a conclusion contrary to that of the IJ.

Walker makes two principal arguments on appeal. First, he argues that the IJ improperly ignored contrary evidence in finding Walker's claim that he was Liberian not credible based on his counterfeit Liberian passport. Second, Walker contends that the IJ improperly relied on the authentic Guinean passport and visa in finding that he was actually a Guinean citizen named Moussa Cherif. We address each of these contentions in turn.

As an initial matter, Walker's claim that the IJ's decision was not based on a review of the entire record is without merit. A reading of the IJ's opinion makes clear that the IJ considered all of the testamentary and documentary evidence in making his determination that Walker was not Liberian but instead a Guinean named Moussa Cherif. In his opinion, the IJ summarized the testimony of Walker, Pritchard and Sherif. He then went on to analyze the counterfeit Liberian passport and authentic Guinean passport as well as Walker's testimony concerning both of those documents. Only after looking at all of that evidence did the IJ render his decision.

Walker next focuses his attention on the IJ's allegedly misplaced reliance on the BIA's decision in *In Re O-D-*. In that case the BIA considered "the appropriate weight to assign to a fraudulent document entered into evidence during the course of an asylum hearing." 21 I. & N. Dec. at 1081. The BIA agreed with the IJ in that case that where the fraudulent document is presented for purposes of applying for asylum (as opposed to gaining entry into the United States) the "submission into evidence of . . . [a] counterfeit document generally discredits his testimony regarding asylum eligibility and specifically discredits his claim of identity." *Id*. at 1082. The BIA went on to find "that the presentation of such questionable documents, in the absence of an explanation regarding such presentation, creates serious doubts regarding the respondent's overall credibility." *Id*. at 1083.

On appeal, Walker takes issue with the IJ's characterization of *In re O-D-* as "on all fours" with the present case. Walker argues that his case is distinguishable from *In re O-D-* because (a) he proffered additional witnesses to support his claim of Liberian citizenship and (b) offered an explanation of the forged Liberian birth certificate.

The fact that Pritchard and Sherif testified on Walker's behalf is not dispositive. Assuming *arguendo* that the IJ found them credible, nothing in *In re O-D-* precluded the IJ from finding the submission of the counterfeit birth certificate a sufficient ground upon which to base his determination that Walker's claim of identity was incredible.

Furthermore, substantial evidence supported the IJ's determination that Walker's

"explanation" for the forged birth certificate was no real explanation at all. Walker did not dispute the INS forensic report that the birth certificate was a forgery. Instead, he testified simply that his friend sent it to him from Liberia. On appeal, Walker casts this explanation as one of ignorance – that is, his lack of explanation should be excused because he did not know the certificate was counterfeit. Even if we accepted Walker's proffered testimony as true, this Court has never held that an IJ should ignore the existence of fraudulent documents where a petitioner pleads ignorance. Walker bore the burden of proving his claim with credible evidence. *See Gao*, 299 F.3d at 272 (citation omitted). Thus, his contention here is without merit.

Walker next argues that the existence of an authentic Guinean passport is insufficient proof to establish that he is a citizen of Guinea. It is true that the existence of a passport may not be *per se* evidence of identity. *See Palavra v. INS*, 287 F.3d 690, 692 (8th Cir. 2002). Here, however, the IJ based his determination on the fact that Walker submitted both a legitimate passport from Guinea and a fraudulent birth certificate from Liberia and did not contest the INS forensic report's findings as to either document. The existence of both those documents constituted substantial evidence in support of the IJ's decision. This conclusion is bolstered by the fact that Walker could not explain, either through his own testimony or through an affidavit or letter from Seku Bah, how Seku Bah was able to obtain an authentic Guinean passport for him if he was indeed Liberian and not Guinean.

Finally, Walker argues that the IJ's decision was not based on substantial evidence because the IJ misremembered the record and engaged in improper speculation. Walker is correct that the IJ's decision contains certain conclusions that evince a misinterpretation of the record. In particular, the IJ's finding that it was implausible that Seku Bah spoke in French at the U.S. consulate is not supported by the record. Walker testified that Seku Bah was Guinean, not Liberian, and thus the fact that he conducted the conversation at the U.S. consulate in French is entirely reasonable. However, despite these infirmities, the record evidence as a whole supports the IJ's decision and therefore this Court must accept his determination.

### III.

The submission of a counterfeit Liberian birth certificate for which Walker offered no adequate explanation was a sufficient basis upon which the IJ could make a negative credibility determination as to Walker's identity. The existence of that document, in conjunction with the undisputed authentic Guinean passport, was a sufficient basis upon which the IJ could find that Walker was in fact a Guinean named Moussa Cherif. Inasmuch as the IJ's decision was supported by substantial evidence in the record, we must uphold the IJ's adverse credibility determination.

We will deny the Petition for Review.[3]

---

[3] Walker also argues that the BIA failed to comply with its own regulations when it issued a summary affirmance in this case. We are bound by our recent decision in *Dia v. Ashcroft*, 353 F.3d 228 (3d Cir. 2003) (en banc), which upheld the constitutionality of the BIA's summary affirmance procedure.