# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-3806

_____

| | | |
|---|---|---|
| Haregu Berhe Kinfe, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an Order |
| v. | * | of the Board of Immigration Appeals. |
| | * | |
| John Ashcroft, Attorney General of the | * | [UNPUBLISHED] |
| United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: December 16, 2004
Filed: February 7, 2005

_____

Before WOLLMAN, MAGILL, and COLLOTON, Circuit Judges.

_____

MAGILL, Circuit Judge.

Petitioner Haregu Berhe Kinfe claimed to be an Ethiopian national of Eritrean ethnicity and sought asylum in the United States after a war broke out between Eritrea and Ethiopia. The immigration judge (IJ) and Board of Immigration Appeals (BIA) found that Kinfe was not a national of Ethiopia as claimed, but rather was a national of Eritrea. On that basis, the IJ and BIA denied relief, though the IJ did grant withholding of removal to Ethiopia finding that Kinfe would more likely than not be persecuted there. We deny the petition for review.

# I.

Eritrea was formerly a province of Ethiopia. In the early 1990s, it declared independence. In the late 1990s, fighting between the two countries and persecution of ethnic Eritreans within Ethiopia ensued.

Kinfe was born in 1946 in Mesafro, Ethiopia (now a part of Eritrea). She was married to an Ethiopian soldier in Mek'ele, Ethiopia and resided in the Tigray region of Ethiopia (both of which are still in Ethiopia today). They had three children before her husband died in 1976.

Kinfe contends that Yosef Gebramikel (who is apparently either a U.S. citizen or lawful resident) arranged for her to come to work in his house in the United States. She also contends that Gebramikel's sister arranged for Kinfe to go to Asmara, Eritrea to obtain a passport (rather than Addis Ababa, Ethiopia). Kinfe testified that she had nothing to do with obtaining the passport other than having her picture taken.

Kinfe arrived in the United States around March 30, 1997. She claims that she worked as a servant for the Gebramikel family with extremely long hours and almost no contact with the outside world. Eventually, she learned she had a cousin in Minnesota and was able to visit him. She applied for asylum after learning of the war between Ethiopia and Eritrea and the persecution within Ethiopia of ethnic Eritreans.

The IJ held a hearing at which Kinfe and another witness testified. The IJ initially found that Kinfe was a national of Eritrea because of the passport she carried and his belief that she is eligible for Eritrean nationality on the basis of her ethnicity. The IJ explicitly concluded that Kinfe's testimony was "generally credible" despite her problem with remembering dates. The IJ then rejected Kinfe's argument that she would be subject to persecution in Eritrea, but did find that she would be subject to persecution in Ethiopia and therefore granted withholding of removal to Ethiopia.

The BIA affirmed the IJ's decision, adopting it as its own, and went on to reject the due process arguments that Kinfe raised on appeal.

## II.

We affirm the BIA's decision if "it is supported by substantial evidence on the administrative record considered as a whole." Awale v. Ashcroft, 384 F.3d 527, 530 (8th Cir. 2004). A BIA finding of fact is "conclusive unless any reasonable adjudicator would be compelled to conclude the contrary." 8 U.S.C. § 1252(b)(4)(B). We reverse only if "no reasonable fact-finder could arrive at the conclusion[ ]" of the BIA. Mwangi v. Ashcroft, 388 F.3d 623, 627 (8th Cir. 2004).

## A.

The attorney general has discretion to grant asylum to a person physically present in the United States if that person meets the definition of a "refugee." 8 U.S.C. § 1158(b)(1). In turn, a refugee is "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A) (emphasis added). One of the first determinations to be made in an asylum case, therefore, is the country of the alien's nationality. The alien is eligible for asylum only if she has a well-founded fear of persecution in the country of her nationality.

The IJ undertook the asylum analysis with respect to Eritrea because he found that Kinfe was a national of Eritrea. This finding was largely based on two factors. First, the IJ noted that Kinfe possessed an Eritrean passport (that states that her address at the time was in Eritrea). Second, the IJ analyzed the nationality laws of

Eritrea and concluded that Kinfe had a claim to nationality based on the undisputed facts of her birthplace and heritage. Kinfe claims that the BIA and IJ's conclusion was wrong because she did not participate in the procurement of the passport, testified that she is an Ethiopian national, and was married to an Ethiopian solider.

Kinfe relies heavily on Palavra v. INS, 287 F.3d 690, 692 (8th Cir. 2002), which states that possession of a passport is evidence of nationality in the issuing country, but is not conclusive on the point. In Palavra, the IJ and BIA found that a family that was ethnically Croatian, but that claimed to be nationals of Bosnia, were Croatian nationals. Id. The IJ and BIA relied on the Palavras' passports which indicated that they were Croatian nationals, statements on their asylum applications indicating that they were Croatian nationals, and the fact that they had referred to themselves as Croatian nationals "from time to time in the past." Id. Despite this, the Palavras contended that they were not Croatian nationals, but were ethnic Croatians who were nationals of Bosnia. They contended that they sought Croatian passports because it was difficult for an ethnic Croatian to secure a Bosnian passport and their son needed medical treatment. Id. at 693. This court vacated the BIA's decision because it had failed to consider the evidence proffered by the Palavras. Id. at 694.

Palavra does not, however, control this case. Kinfe testified that she was uninvolved in procuring the passport, but she has proffered no evidence to explain why the Eritrean government issued the passport and exit permit, and then renewed the passport in Washington, D.C. In contrast, the Palavras clearly explicated a coherent rationale as to why they carried Croatian passports: the Croatian government gave them to the family for humanitarian purposes. Here, there is nothing to explain why Eritrea would give a passport to a non-Eritrean. Kinfe only testified that the family she was going to work for in the United States told her to leave via Eritrea and that she did not participate in acquiring the passport other than having her picture taken. As the BIA commented, there is insufficient evidence to overcome the presumption of nationality that a passport creates.

-4-

The IJ and BIA also relied on Eritrea's nationality laws. It is undisputed that Kinfe is ethnically Eritrean. Her parents are Eritrean and she was born in what is now Eritrea. The Eritrean nationality proclamation states that "any person born to a father or a mother of Eritrean origin in Eritrea or abroad is an Eritrean national by birth." App. at 47. A person is of "Eritrean origin" if they were a resident of Eritrea prior to 1934. App. at 50. It is undisputed that Kinfe's parents were of "Eritrean origin" and therefore, under the nationality proclamation, Kinfe is an Eritrean by birth. Kinfe points to the provisions of Eritrean law that disallow dual nationality and argues that because she is an Ethiopian national she cannot be an Eritrean national. App. at 47. Kinfe's argument simply assumes the point in contention. She proffers no evidence other than her own testimony that she believes herself to be an Ethiopian national. Kinfe also argues that she forfeited her right to Eritrean nationality by marrying an Ethiopian soldier, who passed away over twenty years ago. The record is, however, devoid of any evidence to suggest that having been married to a low-ranking Ethiopian soldier over twenty years ago divested Kinfe of her Eritrean nationality.

There is certainly evidence to support Kinfe's contention that she is an Ethiopian national, but that is not sufficient for relief. Hassan v. Ashcroft, 388 F.3d 661, 666 (8th Cir. 2004) ("We may not reverse merely because we would have decided the case differently."). We can only grant relief if no reasonable factfinder could conclude that Kinfe is an Eritrean national. We cannot make that finding. The Eritrean passport and nationality laws combined with the lack of explanatory evidence for obtaining an authentic passport would allow a reasonable factfinder to conclude that Kinfe is an Eritrean national. We therefore conclude that the BIA's determination that Kinfe is an Eritrean national is supported by substantial evidence.

B.

Kinfe also contends that the IJ and BIA erred in finding that Kinfe does not have a well-founded fear of persecution in Eritrea. This argument is completely

predicated on Kinfe's contention that she is an Ethiopian national. We have already determined that substantial evidence supported the BIA's determination of Kinfe's nationality. There is no evidence that an ethnic Eritrean who is an Eritrean national would face persecution in Eritrea. There is, therefore, no error in the BIA's determination.

## III.

Kinfe claims violations of her due process rights in three respects. First, Kinfe alleges that there were problems with translation during the hearing. Second, Kinfe claims that the transcript from the hearing is insufficient to permit proper review because it contains numerous "indiscernables." Third, Kinfe claims that a witness was improperly prevented from testifying. Claims of constitutional error are reviewed de novo. Flores v. Ashcroft, 354 F.3d 727, 729-30 (8th Cir. 2003).

Kinfe must establish prejudice to succeed on her claim that her due process rights were violated. Meas v. Ashcroft, 363 F.3d 729, 730 (8th Cir. 2004) (citing Hartooni v. INS, 21 F.3d 336, 340 (9th Cir. 1994)). Kinfe's brief never describes or even alleges that any prejudice resulted from the translation problems. Therefore, Kinfe's due process claims fail with regard to the alleged translation problems.

The transcript claim fails for the same reason as the translation claim: Kinfe does not show prejudice. We also note that we were able to adequately review Kinfe's claims of error on the merits. It is quite clear that there was no prejudice, as the operative facts from the transcript were described in the IJ's opinion. Thus, there was no due process violation regarding the failings of the transcript.

Kinfe further complains that her due process rights were violated when the IJ declined to allow one of her witnesses to testify. According to the Revised Witness List, Kinfe had two witnesses present: two of Kinfe's first cousins that would "testify

how [they] knew [Kinfe] in Ethiopia and to the problems that [she] will face in Ethiopia if she is forced to return." App. at 54. After hearing the testimony of one of the cousins, the IJ determined that the evidence would be cumulative and declined to hear testimony from the other cousin.

Kinfe identifies three Seventh Circuit cases she contends support her position. Kerciku v. INS, 314 F.3d 913 (7th Cir. 2003); Podio v. INS, 153 F.3d 506 (7th Cir. 1998); Niam v. Ashcroft, 354 F.3d 652 (7th Cir. 2004). In these cases, the Seventh Circuit found due process violations when the IJ wholly excluded proffered testimony, which the court found prejudiced the aliens. The government contends here that Kinfe has not shown prejudice because the witness would not have testified to the nationality laws of Ethiopia "or any facts germane to the issue of whether Ms. Kinfe is a national of Ethiopia, or the circumstances in Eritrea." We agree. It is not disputed that Kinfe spent much of her life living within Ethiopia, and the IJ and BIA concluded that she would face persecution if she returned to Ethiopia. Because there was already credible testimony on the points that the witness was likely to testify about, the testimony of the second cousin would have been cumulative and unnecessary. There is, therefore, no due process violation. See Laurent v. Ashcroft, 359 F.3d 59, 62-63 (1st Cir. 2004).

## IV.

For the aforementioned reasons, we deny the petition for review.

_____