# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3997

_____

Tu Kai Yang, Xue Lin Wu,   &ast;
         &ast;
   Petitioners,   &ast;
         &ast; Petition for Review of an
  v.      &ast; Order of the Board of
         &ast; Immigration Appeals.
Alberto Gonzales,[1] Attorney General &ast;
of the United States,   &ast;
         &ast;
   Respondents.  &ast;
         &ast;

_____

Submitted: September 16, 2005
Filed: November 4, 2005

_____

Before BYE, HEANEY, and COLLOTON, Circuit Judges.

_____

HEANEY, Circuit Judge.

  Tu Kai Yang (Yang) and his wife, Xue Lin Wu (Wu), citizens of China, appeal the Board of Immigration Appeals's (BIA) November 20, 2003 decision, affirming and adopting the Immigration Judge's (IJ) October 12, 2001 decision. The IJ denied petitioners' application for asylum, withholding of deportation and removal, and

_____

[1]Alberto Gonzales has been appointed to serve as Attorney General of the United States, and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

request for relief under the Convention Against Torture (CAT). Yang and Wu respectively concede removability/deportability, but maintain they cannot return to China because they fear persecution for violating China's strict family planning policies. The IJ and the BIA failed to consider specific, direct, and credible evidence that petitioners' fear of future persecution is well-founded, and erred by not granting petitioners' asylum application. We vacate the orders for removal and deportation, and remand for determination of their eligibility for withholding of removal/deportation, and relief under the CAT.[2]

## BACKGROUND

Yang and Wu, Chinese citizens from Fujian Province, separately entered the United States in 1993. Petitioners met and were married in the United States, and have a son and a daughter, both born in the United States. Wu has been pregnant a total of five times, but has had three miscarriages. Petitioners wish to have at least four children. They fear that if they are forced to return to China, they will suffer persecution, specifically forced sterilization or abortions, for violating China's coercive, one-child, family planning policy. Petitioners base their fear on China's official policy and the past forced sterilizations and abortions suffered by several of their siblings and siblings' spouses.

Chinese government authorities are aware, or will be notified, that petitioners have more than one child. If forced to return to China, petitioners will have to re-establish their household by registering with the government, and will be required to report their two children, whom they intend to take with them. Additionally, in her attempt to obtain an authenticated, notarial birth certificate in China, Wu disclosed

---

[2]The BIA opinion addressed only the asylum matter, and we therefore do not address the petitioners' remaining claims. Accordingly, the petitioners have not waived their right to appellate review of the IJ's forthcoming determination on the withholding of removal/deportation and CAT claims.

to the government that she was married in the United States and has two children. Chinese government officials visited her family's home in Fujian Province to verify that she had more than one child. When her brother informed the officials that she has two children and intends to have more, he was told that she would have to follow the family planning policy if she returned to China.

Wu's family is well-known for violating the family planning policy, and thus specifically targeted by government officials. Wu is the youngest of six children, and only her oldest brother and sister, who were married before there was a family planning policy, escaped coercive population control procedures. Her second oldest brother's wife was forcibly sterilized in 1982 after she had two children; her third oldest brother was sterilized in 1986 after having two children; her fourth oldest brother's wife was forced to abort her second child and forcibly fit with a "double ring" contraceptive device; and her second oldest sister's husband was sterilized in 1987. The procedure was unsuccessful and, after they had a third child in 1989, he was ordered sterilized again, but he fled and obtained asylum in the United States.

Two of Yang's three siblings have been directly affected by China's coercive family planning policy. His oldest brother's wife was fit with a "double ring" contraceptive device, and his second oldest brother's wife was forcibly sterilized in 1996. Yang's sister is not subject to the family planning policy because she lives in Hong Kong.

In support of their asylum claim, Yang and Wu also submitted a 2001 affidavit from retired demographic expert John Aird, Senior Research Specialist on China, for the United States Bureau of Census from 1981 through 1985, which described China's family planning policy. According to Aird's affidavit, the standard penalty for a couple who had a second unauthorized child was sterilization of either the husband or the wife, and instances of coercion in family planning in 2000 and 2001 were more extreme than previously reported. Furthermore, returning Chinese

emigrants with foreign-born children were not exempt from the family planning policy.

The 1998 Profile of Asylum and Country Conditions for China (the Profile) and the 1999 Country Reports on Human Rights Practices for China (the Report) buttress the Aird affidavit in many respects. According to the Profile, "Chinese officials acknowledge privately that forced abortions and sterilizations still occur in areas where family planning personnel may be uneducated and ill-trained." (R. at 606.) In Fujian Province, the policy prohibits more than one child, although in rural areas, "[a] second child is allowed if the first is a girl [or is disabled], an exception that takes into account the demand for farm labor and the traditional preference for boys." (Id. at 390, 608.) But these exceptions are irrelevant here because petitioners already have a healthy son. Additionally, the Report discusses regulations requiring that "[i]f a couple has two children, those regulations require that either the man or woman undergo sterilization." (Id. at 391.)

Following a hearing on petitioners' claims, the IJ denied relief. The IJ found petitioners' testimony to be credible, but found that both failed to establish past persecution or establish a well-founded fear of future persecution, in spite of the evidence presented to the contrary.

> In the instant cases, neither respondent has been subject to [forced sterilization or abortion] in the past. Accordingly, the Respondents' claim based on coercive family planning measures by the Chinese government falls short of establishing past persecution or a well-founded fear of future persecution based on one of the five grounds enumerated in the Act.

(R. at 45 (emphasis added).) In its analysis, the IJ quoted at length from the Report and the Profile. In finding that petitioners failed to meet the burden for asylum, the IJ did not address the applications for withholding of removal/deportation and relief

-4-

under the CAT.[3] The petitioners appealed to the BIA. On November 20, 2003, the BIA dismissed the petitioners' appeal and affirmed and adopted the decision of the IJ. In its brief summary opinion, the BIA referred to the Aird Affidavit, the petitioners' testimony, and the State Department Report in finding that petitioners do not have a well-founded fear of persecution, because petitioners "admit[ed] that they [were] unaware of anyone in their situation of having violated the policy by giving birth to children outside of China." (R. at 738.)

**ANALYSIS**

This court reviews the BIA's asylum eligibility determinations under the substantial evidence standard, and will overturn the decision only if "we find no reasonable fact-finder could arrive at the conclusion reached by the BIA." S-Cheng v. Ashcroft, 380 F.3d 320, 323 (8th Cir. 2004). "Where the BIA adopts and affirms the IJ's opinion, we review the IJ's opinion directly." Bernal-Rendon v. Gonzales, 419 F.3d 877, 880 (8th Cir. 2005).

An alien is eligible for asylum if classified as a "refugee." 8 U.S.C. § 1158(b)(1). "A 'refugee' is an alien unwilling to return to her home country 'because of persecution or a well-founded fear of persecution on account of . . . political opinion.'" Zheng, 415 F.3d at 959 (quoting 8 U.S.C. § 1101(a)(42)(A)). The term, "refugee," includes "a person who has been forced to abort a pregnancy or to

---

[3]Withholding of removal and CAT relief involve more stringent standards than a claim for asylum. See Turay v. Ashcroft, 405 F.3d 663, 667 (8th Cir. 2005) (noting that to qualify for withholding of removal, the alien must show there is a "clear probability" that his life or freedom would be threatened because of one of the enumerated reasons, upon return to his home country) (internal quotations omitted); Perinpanathan v. INS, 310 F.3d 594, 599 (8th Cir. 2002) ("An applicant for protection under the [CAT] must establish that it is more likely than not that he or she would be tortured if returned to the proposed country of removal.").

undergo involuntary sterilization . . . and a person who has a well founded fear that he or she will be forced to undergo such a procedure." 8 U.S.C. § 1101(a)(42)(B).

A "well-founded" fear of future persecution is one which is "subjectively genuine and objectively reasonable." Bellido v. Ashcroft, 367 F.3d 840, 843 (8th Cir. 2004). Petitioners must "'demonstrate through credible, direct, and specific evidence that a reasonable person in [their] position[s] would fear persecution.'" Zheng, 415 F.3d at 960 (quoting Mwangi v. Ashcroft, 388 F.3d 623, 627 (8th Cir. 2004)). To be objectively reasonable, however, it is not necessary "to demonstrate there is a 100% chance, or even a 50% chance, of persecution upon [their] return to [China]." Bellido, 367 F.3d at 845 n.7. The IJ incorrectly concluded that petitioners' fear of future persecution was not objectively reasonable because they had failed to show they had suffered this kind of action in the past.

In Zheng, this court was presented with a similar asylum petition involving a female Chinese citizen from Fujian Province with three United States-born children. Zheng feared she would be forcibly sterilized because she had violated the coercive family planning policy. Zheng's sister, also an applicant for asylum, testified that she was forced to abort her second pregnancy when she was six months and seven days pregnant. Zheng also submitted an affidavit from John Aird, which refuted "alleged misrepresentations concerning China's coercive population control policy in Department of State reports." Zheng, 415 F.3d at 958.

Zheng's application for asylum and related relief was denied by the IJ. The IJ found Zheng had a subjective fear of future persecution, but determined Zheng's fear of future persecution was not objectively reasonable. Id. The IJ also found Zheng, her husband, and her sister to be generally credible, but stated that it would "not give great weight" to Zheng's sister's testimony, because Zheng's sister's asylum application was also pending but not before the IJ. Id. In overturning the IJ and the BIA, our court held the following evidence showed Zheng's fear was "well-founded":

-6-

(1) her sister was forced to have an abortion in China, undercutting claims that forced abortions or sterilizations no longer occur in Fujian province;[4] (2) Zheng intended to bring her three children and husband if removed to China; and (3) Aird's affidavit concluded Chinese authorities would have reason to enforce the one-child policy against United States-born children.  Id. at 963.

Similarly, Yang and Wu presented specific, direct evidence, found credible by the IJ that:  (1) several family members have been forcibly sterilized, suggesting that forced abortions and sterilizations still occur; (2) petitioners will not abandon their children in the United States if forced to return to China; (3) the reports relied upon by the IJ are directly disputed by the Aird affidavit; and (4) a government official told Wu's brother that she would be sterilized upon return to China.

Although it found the petitioners' evidence credible, the IJ's analysis relies primarily on the Profile and the Report.  Though these reports are recognized as persuasive, "'use of such official report[s] does not substitute for an analysis of the facts of each applicant's individual circumstances.'" Zheng, 415 F.3d at 960 (quoting Krastev v. INS, 292 F.3d 1268, 1277 (10th Cir. 2002)).  Moreover, the petitioners here provided the Aird affidavit, which this court has found sufficient to dispute the information in the State Department reports.  Id. at 962.  If an agency "makes a finding of fact without mentioning or analyzing significant evidence, its decision should be reconsidered." Id. at 963 (quoting Habtemicael v. Ashcroft, 370 F.3d 774, 783 (8th Cir. 2004)).  The IJ stated it considered all the evidence and testimony presented, yet the order lacks any analysis or mention of significant evidence in the Aird affidavit and the petitioners' testimony.

---

[4]The IJ discounted this evidence, but our court found this to be an error, because "[t]he fact that in 1998 Fujian family planning authorities forced Zheng's sister to abort her second child when she was six months and seven days pregnant is specific, direct evidence demonstrating Zheng's fear is objectively reasonable." Zheng, 415 F.3d at 960.

The IJ's suggestion that petitioners could potentially avoid persecution by relocating within China is incorrect. While it is true that applicants do not have a well-founded fear of persecution if they can avoid harm by simply relocating within their home country, 8 C.F.R. § 1208.13(b)(2)(ii), this is not true when the persecution is by government officials or government sponsored:

> In cases in which the persecutor is a government or is government-sponsored, or the applicant has established persecution in the past, it shall be presumed that internal relocation would not be reasonable, unless the Service establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate.

8 C.F.R. § 1208.13(b)(3)(ii). Accordingly, the IJ erred in concluding that petitioners were ineligible for asylum on the basis of speculation that they could potentially avoid persecution by relocating within China.

Though the government directs our attention to the recent Second Circuit case of Huang v. INS, 421 F.3d 125 (2nd Cir. 2005), that case turns on facts different from those here. In Huang, the only "relevant" evidence offered by Huang was testimony about his sister-in-law's experience that she had been forcibly sterilized, which the court found to be

> sparse and uncorroborated, and would not be probative even if believed because Huang omitted any evidence that might bear on whether Huang might be in similar circumstances (such as the locality in which this woman lived, when she was sterilized, her marital status and the number and sex of her children at that time, and so on). Moreover, Huang has two older sisters, one with two sons and one with three children, and he made no allegation that they had been penalized in any way for having children.

Id. at 129.  In contrast, as detailed at length in this opinion, many of Yang and Wu's similarly situated family members have suffered persecution on the basis of the coercive family planning policy.[5]

## CONCLUSION

Yang and Wu presented substantial, specific, direct, and credible evidence supporting the conclusion that they have a well-founded fear of persecution if they are removed to China, and should be granted asylum.  The IJ's finding is not supported by substantial evidence, especially in light of our court's recent decision in Zheng.  Accordingly, the IJ's and the BIA's decisions are vacated, and the matter is remanded to the IJ for proceedings consistent with this opinion.

---

[5]At oral argument, the government argued that granting asylum to petitioners and those in a similar situation would open the "floodgates."  We find this argument unpersuasive, especially in light of the recent changes made to the 8 U.S.C. § 1157, by the REAL ID Act of 2005,  removing the cap on the number of refugees granted asylum on the basis of persecution for resistence to coercive population control methods.  See the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(g)(2), striking paragraph (5) of 8 U.S.C. § 1157(a).