# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2041

_____

| | | |
|---|---|---|
| Haregwoin Abrha, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an Order of |
| v. | * | the Board of Immigration Appeals. |
| | * | |
| Alberto Gonzales[1], Attorney General of | * | |
| the United States of America | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: November 17, 2005
Filed: January 10, 2006

_____

Before MURPHY, BOWMAN, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Haregwoin Abrha is a native of Ethiopia who was admitted into the United States in April, 1991 as a nonimmigrant visitor. She had permission to stay until October 1991, but she remained in the country after that time. In April, 1993 she filed an asylum application which alleged that she had suffered past persecution in Ethiopia and that she maintained a reasonable fear of future persecution if returned. The

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Alberto Gonzales is substituted for his predecessor, John Ashcroft.

immigration judge (IJ) denied Abrha's application for asylum, withholding of removal, and protection under the Convention Against Torture. She appealed to the Board of Immigration Appeals (BIA) which affirmed the IJ's decision without opinion. Abrha now petitions for review, arguing that the IJ abused his discretion in denying her application for asylum because she suffered past persecution and has a well founded fear of future persecution if returned to Ethiopia. We deny the petition.

Abrha is a member of the Tigre ethnic group and is married to Tebebe Mulleta, a former Ethiopian army colonel and a member of the Oromo ethnic group. Abrha's 1993 application for asylum was based upon both past persecution inflicted upon her by the Mengistu regime which was in power when she left and her existing fear of future persecution from the Ethiopian Peoples Revolutionary Democratic Front (EPRDF) which overthrew the prior government in 1991 shortly after her departure from Ethiopia.

On December 1, 1995 Immigration and Naturalization Services issued an Order to Show Cause and Notice of Hearing, charging that Abrha was removable because she had remained in the United State unlawfully. She appeared before the IJ on four separate dates: September 19, 1996; April 16, 1997; October 6, 1997; and September 20, 1999. At these hearings the IJ received testimony from the appellant, her husband, and her eldest daughter, Mete Tebebe.

Abrha testified that she had owned an electronic shop in Ethiopia which had been closed by the Mengistu regime for allegedly copying anti government pamphlets. When she attempted to reopen the shop, the Mengistu authorities demanded information regarding her husband and she was eventually detained from October 1990 to November 1990. Her detention was based on their suspicion that she had been involved in a failed 1989 coup like her husband, who was imprisoned during this entire time. She claimed she had been beaten and tortured, and she had been ordered

to report every three days after she was released and not to travel without government permission.

According to Abrha's testimony, she fled Ethiopia only days before the Mengistu regime was overthrown by the EPRDF. Although her husband had been detained by both the Mengistu and EPRDF governments, she admitted that his detention by the EPRDF was for reeducation purposes. Abrha also admitted that she had remained in the United States unlawfully and conceded removability, but stated that she feared persecution based on her mixed ethnic marriage and her husband's past association with the Mengistu regime. She testified that she had not "hear[d] a lot of good things about the new regime" and that "a lot of things could happen to [her] if returned," although she was not specific as to what. She also testified that she suffers headaches from having been struck in the head with the butt of a gun while detained in 1990. No medical evidence documenting existing physical or psychological trauma was produced.

Colonel Mulleta testified about his detention by both the Mengistu regime and the EPRDF. He testified that he had been imprisoned by the Mengistu regime for his suspected involvement in a failed coup in 1989. Although his detention by the EPRDF was for reeducation purposes, it resulted from his high military position in the Mengistu regime and his suspected involvement in the Oromo Liberation Front. Mulleta testified that he came to the United States in October 1994 and was granted asylum in 1995. When asked what might happen to Abrha if she returned to Ethiopia, he responded that she could face negative treatment from the EPRDF because of her ethnic heritage as well as her mixed ethnic marriage. Abrha's eldest daughter Mete Tebebe then testified that she and her younger sister had been granted derivative asylum through their father. If Abrha was returned to Ethiopia the daughter feared that she "might again encounter the same difficulties" she faced while the Mengistu regime was in power.

The IJ also received a State Department Profile of Asylum Claims from Ethiopia. This report indicated that the new government is a considerable improvement from the Mengistu regime and all indications "strongly suggest that [those] who had fled Mengistu's rule should now be able to return without reprisals" and would "not now be in danger of abusive treatment from the new government upon returning."

After hearing all of the evidence, the IJ denied Abrha's application on September 20, 1999, finding that although she had been subject to past persecution, she did not have a well founded fear of future persecution since all of the problems she suffered in the past had been inflicted by a regime no longer in power. The BIA affirmed the IJ's decision without opinion on March 27, 2003. Abrha petitions for review, arguing that substantial evidence indicated that she had suffered past persecution and has a reasonable fear of future persecution.

An IJ decision affirmed by the BIA without opinion is treated as the final agency decision, Bropleh v. Gonzales, 428 F.3d 772, 775 (8th Cir. 2005), and we review it directly. Yang v. Gonzales, 427 F.3d 1117, 1120 (8th Cir. 2005). We review the denial of asylum for an abuse of discretion, and the IJ's decision will be upheld so long as it "supported by reasonable, substantial, and probative evidence." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Yang, 427 F.3d at 1120; Hasalla v. Ashcroft, 367 F.3d 799, 803 (8th Cir. 2004). Appellant must show that the evidence presented "was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." Elias-Zacarias, 502 U.S. at 483-84; Amin v. Ashcroft, 388 F.3d 648, 650 (8th Cir. 2004).

The Attorney General has the authority to grant asylum to refugees. 8 U.S.C. § 1158(a). A refugee is a person unable to return to her country "because of persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C.

-4-

§ 1101(a)(42)(A). Abrha bears the burden of proving that she has suffered past persecution or has a well founded fear of future persecution. 8 C.F.R. § 1208.13(b). The parties agree that Abrha has suffered past persecution, which creates a presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). This presumption may be rebutted, however, if the respondent shows by a preponderance of the evidence that there is no longer a reasonable fear of future persecution, 8 C.F.R. § 1208.13(b)(1)(i)(A), in which case the burden reverts back to the alien. 8 C.F.R. § 1208.13(a)(1). In this matter the original source of Abrha's persecution, the Mengistu regime, has been removed from power and nothing in the record shows that the new regime would commit similar abuses. The burden is thus on Abrha to show that she will likely suffer persecution at the hands of the new government. See In re N-M-A-, 22 I. & N. Dec. 312 (BIA 1998).

Neither Abrha nor her witnesses could detail specific harm she would face if she were returned to Ethiopia. Nothing in the record indicates either that she has been persecuted in the past based on her ethnicity or that she would be persecuted in the future based on her ethnicity. When asked whether there was documentation proving that Tigreans were persecuted based on their ethnicity, counsel replied "no, I don't have any." Abrha's fears regarding the new regime in Ethiopia are based on second hand knowledge and mere speculation which does not counter the State Department view that those returning to Ethiopia are not likely to suffer persecution at the hands of the new government. There is also evidence that the Tigrean People's Liberation Front remains the most influential party within the new government, and Abrha belongs to the same ethnic group. An IJ may reasonably rely on the State Department's informed assessment of current country conditions as they relate to likelihood of future persecution. See Gebrehiwot v. Ashcroft, 374 F.3d 723, 726 (8th Cir. 2004); see also Kayembe v. Ashcroft, 334 F.3d 231, 235-37 (3d Cir. 2003); Gonahasa v. INS, 181 F.3d 538, 542 (4th Cir. 1999). We conclude based on the record before us that substantial evidence supports the IJ's finding that Abrha did not have a reasonable fear of future persecution.

An application for asylum made in removal proceedings is also treated as a request for withholding of removal, 8 C.F.R. § 1208.3(b), in which the alien must demonstrate that "it is more likely than not that the alien would be subject to persecution." INS v. Stevic, 467 U.S. 407, 429-30 (1984). This standard is more difficult to satisfy than a well founded fear of future persecution, and a petitioner cannot establish a right to withhold removal if she has not shown a well founded fear of future persecution. Gemechu v. Ashcroft, 387 F.3d 944, 948-49 (8th Cir. 2004). We conclude that Abrha was not entitled to withholding of removal.

Although unable to show a well founded fear of future persecution, Abrha might obtain a discretionary grant of asylum if she could demonstrate that the past persecution was so severe that repatriation would be inhumane. See 8 C.F.R. § 1208.13(b)(1)(iii)(A). Not all harm is severe enough to warrant a discretionary grant of asylum, however. Factors which should be considered include the degree of harm suffered, the length of time over which the harm was inflicted, and evidence of psychological trauma resulting from the harm. See In re N-M-A-, 22 I. & N. Dec. at 326. Abrha was detained for two months and abused at times during this period. No evidence in the record indicates that she has suffered any physical or psychological problems because of this treatment, however. Her treatment does not require a discretionary grant of asylum, particularly since the offending regime is no longer in power.

Accordingly we deny the petition for review.

_____