**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0644n.06
Filed: August 31, 2007

No. 06-3806

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

XIAO XING CHEN,
     *Defendant-Appellant,*

                                      On Petition for Review from the
     v.                               Board of Immigration Appeals

ALBERTO R. GONZALES, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA
     *Plaintiff-Appellee.*

_____

Before: KENNEDY and COOK, Circuit Judges; ALDRICH, District Judge[*]

**KENNEDY, J.** Xiao Xing Chen is a Chinese national who was found illegally within the United States and thereafter requested withholding of removal under both the Immigration and Nationality Act and the Convention Against Torture. Her request for withholding of removal was denied by the immigration judge, and the Board of Immigration Appeals affirmed the decision. Ms. Chen argues that the decision below is not supported by substantial evidence. We disagree, and therefore deny the petition.

**BACKGROUND**

On November 23, 1997, Xiao Xing Chen illegally entered the United States through John F. Kennedy International Airport in New York City. While in the United States, she married Yung Guo

_____

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

Chen and had two children, Eric Chen, born March 30, 2004, and Nicole Chen, born October 12, 2002. J.A. 716-17. Ms. Chen had previously entered the country illegally on November 3, 1997 through Los Angeles International Airport and had been deported November 5, 1997. After detaining Ms. Chen in 2005, the government reinstated its previous removal order. Ms. Chen expressed a fear of being beaten while detained in China for illegal exit as well as a fear of being forcibly sterilized for having two children while in the United States, which violates China's one-child policy. Ms. Chen had a hearing before an immigration judge (IJ) on March 1, 2006 to determine whether she qualified for withholding of removal. J.A. 985. The immigration judge determined that Ms. Chen did not carry her burden of proof, and therefore denied her claim for withholding of removal. J.A. 24-27. The Board of Immigration Appeals (BIA) affirmed the immigration judge's decision in a per curiam opinion issued on June 1, 2006. J.A. 4-5. Ms. Chen now appeals, arguing that the decision was not supported by substantial evidence.

## ANALYSIS

Ms. Chen asserts on appeal that the denial of withholding of removal was not supported by substantial evidence. This circuit reviews the BIA's decision, and when the BIA adopts the IJ's and only adds some comments, this court reviews both as if they jointly constitute the decision of the BIA. *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007). Ms. Chen requested withholding of removal under two provisions. The first is the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3) (2006). An alien claiming such relief bears the burden of proving "that it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to [his or her home] country." 8 C.F.R.

2

§ 1208.16(b)(2) (2006). The second is the Convention Against Torture (CAT), 8 U.S.C. § 1252 (2006). To obtain relief the alien must prove that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 U.S.C. § 1252(c)(2) (2006). Determinations under both acts are reviewed in the following manner: "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," and "a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law." 8 U.S.C. § 1252(b)(4)(B), (C) (2006); 8 C.F.R. § 1208.18(e)(1) (2006).

I.

Ms. Chen asserts that the IJ's decision is not supported by substantial evidence. She argues that she proved that she deserved withholding of removal under both the INA and CAT. We evaluate each in turn, and find that the record does not compel such a conclusion.

A.

Ms. Chen argues that she proved that it was "more likely than not that [] she would be persecuted on account of . . . [her] political opinion upon removal to [China]." 8 C.F.R. § 1208.16(b)(2). She alleges that because she has broken China's one-child policy by having two children while in the United States, she will be forcibly sterilized by the Chinese government upon her return to Fujian Province. To support her assertion she points to Mr. John Shields Aird's affidavit, J.A. 44-623, to the testimony before the House Committee on International Relations, J.A. 624-710, to the letters from her husband, her mother, her cousin, and her husband's cousin, J.A. 711 (husband's letter), 712 (mother's letter), 741 (husband's cousin's letter), 751-52 (cousin's letter), and to the Amnesty International Report on China, from January through December 2004, J.A. 956. While Ms. Chen has amassed a large amount of evidence, "any reasonable adjudicator would [not]

3

be compelled to conclude" that the IJ's determination was incorrect based on this record. *See* 8 U.S.C. § 1252(b)(4)(B) (2006).

The IJ was correct in noting that while the evidence compiled by Ms. Chen did prove that forcible sterilization likely still occurs in China, and even likely still occurs in Ms. Chen's home province of Fujian, that does not prove that it is more likely than not to happen to her. Ms. Chen did prove that although her children are U.S. citizens, the Chinese government would probably still consider her to be in violation of the one-child policy if she brings her children back to China with her. J.A. 43, 66-67. She did not prove, however, that the result of the violation would be persecution.

Ms. Chen has introduced no evidence that she will be treated any differently than any other woman in Fujian who has violated the one-child policy, and she has not proven that the general treatment is more likely than not to amount to persecution. Many sources of evidence, such as the Department of State's Profile of Asylum Claims from China and Mr. Aird's affidavit, indicate that China's one-child policy is unevenly enforced. J.A. 37 ("What we do know suggests that implementation [of China's one-child policy] varies from place to place."); J.A. 37 ("[T]he birth limitation policy is unevenly enforced."); J.A. 38 ("Most observers believe that the frequency of [physical coercion to enforce the one-child policy] is declining."); J.A. 48 ("Although since the early 1990s the central authorities have tried to achieve more uniform enforcement of the rules, it remains somewhat uneven."); J.A. 51 ("[Stories told by asylum seekers] may simply reflect the lack of uniformity in program implementation at the basic level, a problem the central and provincial authorities often complain about in the Chinese media."); J.A. 84 ("[W]hile control [over fertility and birth] is lapsing in some places, in others it has become harsher than ever."); J.A. 648 ("But enforcement of this prohibition [on fertility and birth] reportedly varies widely throughout China.");

4

J.A. 662 ("The implementation of these different forms of punishment [for violating the one-child policy] has varied in locations throughout China . . . ."); J.A. 867 ("[China's new 2002 birth] law is intended to standardize the implementation of the Government's birth limitation policies; however, enforcement continued to vary from place to place."). Indeed, the State Department Profile of Asylum Claims, the State Department Report on the Human Rights Practices of China, and testimony by Mr. Aird indicate that since Ms. Chen is from a rural area in Fujian Province, J.A. 941, 945, it is more likely she would only be assessed a social compensation fee for her violation of China's one-birth policy, rather than more extreme punishment such as tubal ligation, J.A. 38 ("China's family planning law is most strictly enforced in Han Chinese urban areas . . . ."); J.A. 40 ("According to the Fujian Provincial Family Planning Committee (FPFPC), there have been no cases of forced abortion or sterilization in Fujian in the last 10 years . . . Local physicians in contact with the U.S. Consulate General in Guangzhou report that they have not seen signs of forced abortions or sterilizations among their patients from Fujian and Guangdong Provinces since the 1980s. . . . Consulate General officers have found that many violators of the one-child policy paid fines but [there was] no evidence of forced abortions or property confiscation."); J.A. 41 ("Families are assessed social compensation fees if they return to Fujian with more than one child after having lived abroad."); J.A. 43 ("In Fujian Province, for example, a family in which both parents are Chinese citizens would be expected to pay social compensation fees . . . . U.S. diplomats in China are not aware of any cases in which returnees from the United States were forced to undergo sterilization procedures on their return."); J.A. 676 ("Population resistance also continues, especially in rural areas, making family planning work difficult."); J.A. 867 ("The one-child limit was more strictly

applied in cities . . . . In most rural areas . . . the policy was more relaxed . . . . In remote areas, limits often were not enforced, except on government employees and Party members.").

The experience of Ms. Chen's family does not change the analysis. Ms. Chen's mother was sterilized in 1983, J.A. 932, and her cousin was sterilized sometime before 1998, J.A. 751. These examples are not recent enough to prove that more than half the women in Fujian Province are being sterilized when they have two or more children today. Ms. Chen's citation to *Yang v. Gonzales*, 427 F.3d 1117 (8th Cir. 2005) is unavailing. In that case, Ms. Wu had five brothers and sisters, and three had been forcibly sterilized by family planning officials, and her husband, Mr. Yang, had three brothers and sisters, and two were forcibly sterilized. *Yang*, 427 F.3d at 1119. Ms. Chen does not have a comparable family history; she has not proven that her "family is well-known for violating the family planning policy, and thus specifically targeted by government officials." *See id.*. Additionally, *Yang* was a determination based on asylum, which requires a subjective fear of persecution that it objectively reasonable. 427 F.3d at 1120-21. This case involves a determination based on withholding of removal, which requires proving it is more likely than not that the applicant will be persecuted, a standard which is more stringent. *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 391 (6th Cir. 1998).

In addition, the fact that Ms. Chen's husband is in hiding from the family planning officials does not prove that *she* is more likely than not to be forcibly sterilized. In his letter to the IJ, Ms. Chen's husband says he is hiding and that the family planning officials are looking for him to sterilize him, but he does not indicate why he knows they are going to sterilize him, rather than assess a social compensation fee or perhaps simply ask for information. *See* J.A. 711; *see also* J.A. 5 n.1; *cf.* J.A. 724 ("Since my husband's release from prison, he has been in hiding far away from

6

his home town in order to avoid being forcibly sterilized by the Chinese Birth Control Officials. He is fearful that he will be sterilized since he has two children."). One cannot say that the IJ's decision that Ms. Chen had not proven that she would more likely than not be forcibly sterilized was not supported by substantial evidence in light of the record evidence; the record does not compel the opposite conclusion. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

B.

Ms. Chen argues that she proved that it was "more likely than not that [] she would be tortured if removed to [China]." *See* 8 C.F.R. § 1208.18(c)(2) (2006). She alleges the same grounds for relief as argued above, namely that she will be forcibly sterilized for violating China's one-child law. She also alleges that because she left China without permission and therefore broke the law, she will be jailed, interrogated, and beaten by the Chinese government upon her return. Her support for this is that China's police generally engage in physical violence against prisoners, J.A. 67-69, 858, and that her husband was beaten while imprisoned for illegally leaving China, J.A. 711.

Ms. Chen's claim of error based on her forcible sterilization allegation fails. The IJ's finding that Ms. Chen did not carry her burden of proof is reviewed under the same standard as above; the IJ's decision stands "unless any reasonable adjudicator would be compelled to conclude to the contrary." *See* 8 C.F.R. § 1208.18(e)(1) (2006). Because it is the same claim and the same review as under the INA, her claim fails under CAT as it did under the INA analysis above.

Ms. Chen's claim that the IJ's decision that she did not prove it was more likely than not that she would be imprisoned and beaten when returned also fails. While her husband was beaten while in detention for illegally leaving China, J.A. 711, Ms. Chen's cousin who was detained for illegally leaving China does not assert that she was beaten while in detention. J.A. 751. Additionally, the

7

general information about China's police force engaging in physically abusive behavior does not establish that it would happen to women as equally as men, or that it generally happens to over half those detained, or that it is more likely to occur to those who have left the country illegally. J.A. 67-69, 858. The only more established pattern for illegal exit is detention and fines, which do not amount to torture. *See* 8 C.F.R. § 1208.18(a)(1), (2) (2006). The IJ's decision that Ms. Chen did not prove that it was more likely than not that she would be detained and beaten in China is supported by substantial evidence; the record does not compel a different conclusion.

## CONCLUSION

For the foregoing reasons, we deny the petition.