**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0036n.06

No. 09-3822

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jan 13, 2011**
LEONARD GREEN, Clerk

| | |
|---|---|
| MOHAMED SEYDY, | ) |
| | ) |
| Petitioner, | ) |
| | ) ON REVIEW FROM THE BOARD OF |
| v. | ) IMMIGRATION APPEALS |
| | ) |
| ERIC HOLDER, JR., ATTORNEY | ) |
| GENERAL, | ) |
| | ) |
| Respondent. | |

Before: ROGERS, SUTTON and McKEAGUE, Circuit Judges.

SUTTON, Circuit Judge. Mohamed Seydy challenges the denial of his application for asylum, withholding of removal and protection under the Convention Against Torture. An immigration judge found his testimony not credible and denied his application. Because substantial evidence supports the immigration judge's decision, we deny the petition for review.

I.

In February 2002, Mohamed Seydy left his native Mauritania for the United States. In November 2002, he married Nguissaly Seydy Serr, a native of Senegal, who followed him to the United States in 2004. They have two children together.

In April 2002, Seydy filed his first application for asylum, and in 2004 Nguissaly did the same.

In February 2005, the Department of Homeland Security issued a Notice to Appear to Seydy and Nguissaly, charging them as removable. In August 2007, an immigration judge denied both applications. The judge found each applicant not credible and held they had not met their burdens for obtaining relief. Seydy and Nguissaly appealed but only pressed Seydy's application for asylum. The Board of Immigration Appeals affirmed, agreeing that Seydy was not a credible witness.

II.

Seydy filed his application for asylum before passage of the REAL ID Act, Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 303 (2005), which modified the legal standards for asylum and credibility determinations. The previously controlling standard, *see* 8 C.F.R. § 1208.13, therefore applies to his application. To receive asylum, Seydy has the burden of establishing that he is a "refugee," *id.* § 1208.13(a), meaning someone "unable or unwilling to return to . . . [his] country because of [past] persecution or a well-founded fear of [future] persecution on account of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

Because the Board did not summarily adopt the immigration judge's reasoning, we review the Board's decision together with any findings of fact by the immigration judge that the Board used to reach its decision. *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007); *see* 8 C.F.R.

§ 1003.1(d)(3)(i). Several discrepancies, all going to the heart of Seydy's claim, support the Board's credibility finding. *See Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). The first pertains to Seydy's brother's alleged murder. In his April 2002 asylum application, Seydy claimed that white Moor soldiers shot and killed his brother in January 2002, causing Seydy to flee Mauritania. Things became less clear from there, as Seydy later struggled to recall in which decade his brother was killed. Seydy's second asylum application stated the soldiers murdered his brother in 1999. Seydy changed his story again before the immigration judge, testifying that soldiers killed his brother in 1989. This is not a minor detail in a list of incidents of persecution. This is a key event that allegedly caused him to fear for his life and flee Mauritania. Seydy's failure to provide a consistent account of his brother's death, including the date, even the decade, of the alleged murder, supports the finding that he was not a believable witness.

The second inconsistency pertains to Seydy's uncle. In his first asylum application, Seydy mentioned only his brother's murder and stated that his brother was his "only family." A.R. 305. In his asylum interview, Seydy brought up his parents, claiming that Moors killed them in 1989, but mentioned no other family members. Seydy later corrected himself and testified before the immigration judge that his parents had died of natural causes. He added that, in 2002, white Moor soldiers killed his uncle. Although asylum applicants are not required to provide an exhaustive, detailed list of all incidents that support their applications, *Liti v. Gonzales*, 411 F.3d 631, 637–39 (6th Cir. 2005), neither is the Board forbidden from noticing an applicant's failure to recall a family member's alleged murder, particularly when the murder is central to the applicant's asylum claim.

Such discrepancies may fairly be characterized as attempts to enhance claims of persecution and thus raise material issues of credibility. *See Shkabari v. Gonzales*, 427 F.3d 324, 329 (6th Cir. 2005).

The contradictions in his testimony and asylum applications, Seydy responds, all stem from his difficulty with the English language. Yet Seydy signed a declaration at his asylum interview saying he was competent in English and waiving his right to an interpreter. Seydy also signed his 2002 asylum application, which "establishes a presumption that the applicant is aware of the contents of the application," 8 C.F.R. § 1208.3(c)(2), and he presented no evidence to the Board or immigration judge to rebut that presumption. As the Board explained, moreover, Seydy's second asylum application, which was prepared with the assistance of an attorney, differed in two key respects from Seydy's testimony before the immigration judge. The application omitted any reference to an uncle and claimed Seydy's brother was murdered in 1999. In his testimony Seydy said his brother was murdered in 1989 and that it was his uncle's murder in 2002 that precipitated his journey to the United States. Based on this evidence alone, a reasonable adjudicator could find that Seydy was not credible.

In his brief, Seydy attaches new evidence to support his claim that country conditions have changed in Mauritania and that he would be persecuted if returned. We cannot consider this evidence because Seydy never presented it to the Board. 8 U.S.C. § 1252(b)(4)(A); *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005).

Because the only evidence Seydy relied upon before the Board was incredible testimony, he did not fulfill his burden for obtaining relief. Having failed to establish his eligibility for asylum, he also fails to meet the more rigorous requirements for withholding of removal. *See Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005). He also has not raised any separate factual predicates for relief under the Convention Against Torture.

In his petition for review, Seydy also argued that the immigration judge erroneously found that he was firmly resettled in Senegal before coming to the United States. As the Board recognized, there is no need to examine this claim of error because Seydy is otherwise ineligible for asylum.

### III.

For these reasons, we deny the petition for review.