NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0386n.06

No. 09-3972

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ERIC KORLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM A FINAL ORDER OF |
| | ) | THE BOARD OF |
| ERIC H. HOLDER, JR., Attorney General, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |

**FILED**

**Jun 07, 2011**

LEONARD GREEN, Clerk

Before: BATCHELDER, Chief Judge; ROGERS and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Eric Korley opposed his removal from the United States, alleging he would suffer future persecution in Ghana, his country of citizenship. In the Board of Immigration Appeals' view, he failed to carry his burden of showing he could not avoid future persecution by relocating to another part of Ghana. In our view, substantial evidence supports the Board's conclusion. We deny the petition for review.

I.

Korley came to the United States in July 2000 on a visitor's visa. He overstayed his visa, and the government initiated removal proceedings against him in 2003. Four years later, Korley applied for asylum, withholding of removal and relief under the Convention Against Torture.

In Korley's home region of Dagbon, violence has arisen between two branches of the royal family over the rules of succession to the tribal chief, known as the YaNa. Members of the Andani branch advocate requiring advanced education before a person is eligible to become the YaNa. Members of the Abudu branch oppose the requirement because their heirs lack the educational credentials of the Andani heirs. Korley's uncle, who like Korley is from the Andani branch, served as the YaNa and championed the education requirement until his death at the hands of Abudus in 2002. The uncle's widow continued the movement to change the succession rules, but Abudus killed her later in 2002. Korley's brother took up the cause, but Abudus killed him in 2003. As a paternal nephew of the assassinated chief, Korley is in line to become the YaNa.

In his application for asylum, Korley admits he has not suffered past persecution. He argues instead that he has a well-founded fear of future persecution based on the Andani-Abudu feud. The immigration judge found that Korley has neither an objectively reasonable nor a subjectively real fear of future persecution in Ghana. The IJ did so for two reasons. First, several of Korley's family members live in other regions of Ghana and have experienced no violence since leaving Dagbon, undermining Korley's claim of an objectively reasonable fear of future persecution. Second, Korley's behavior in the United States, most notably his failure to apply for asylum until five years after his uncle's assassination, belies his subjective fear of future persecution. The Board affirmed, holding that Korley had "not established that he would be unable to avoid his alleged assailants by relocating within Ghana, or that such relocation would not otherwise constitute a reasonable option." A.R. 3.

II.

To gain asylum, an applicant bears the burden of showing that he is a "refugee"—that, as relevant here, he "has a well-founded fear of persecution on account of . . . membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A). Part of Korley's burden requires him to show that he could not "avoid persecution by relocating to another part of" Ghana or that "under all the circumstances it would [not] be reasonable to expect [him] to do so." 8 C.F.R. §§ 208.13(b)(2)(ii), (b)(3)(i). Several factors guide this analysis: "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." *Id.* § 208.13(b)(3).

Substantial evidence supports the Board's (and IJ's) conclusion that Korley reasonably could relocate within Ghana. Korley's mother has lived in Accra, Ghana's capital, since her brother-in-law's murder in 2002. Accra is on the southern coast of Ghana, at the opposite end of the country from the Dagbon area, 320 miles away. Korley's mother has not encountered any problems since moving there, and her presence in Accra gives Korley a "familial tie[]" there. 8 C.F.R. § 208.13(b)(3). Korley also has eight cousins, all sons of the assassinated chief, who live in various parts of Ghana. All of them are in the line of succession to become the YaNa, and none of them has suffered from any violence since their father's death. In view of Korley's sobering allegations, we can understand why he might fear persecution in Dagbon. But the experiences of Korley's mother

and cousins suggest he would not "face other serious harm *in the place of suggested relocation*," namely Accra.  8 C.F.R. § 208.13(b)(3) (emphasis added).

Nor can Korley sidestep this impediment to his claim by showing that his fear of persecution extends nationwide.  He presented no evidence that the Abudus have persecuted anyone outside of Dagbon, and his testimony and the country reports suggest that they never have.  Korley testified that the Abudus "are just farmers, subsistence farmers and fisherm[e]n," A.R. 161, which suggests that they lack the means to track Korley down anywhere in a country of 92,100 square miles and 23 million people.  The country report on human rights practices in Ghana points in the same direction, documenting that "the tension over [Korley's uncle's] burial has been a significant source of conflict in the *northern part* of the country," not the southern part of the country, much less the southern tip of the country where Accra lies.  A.R. 209 (emphasis added); *see Fisenko v. Holder*, 336 F. App'x 504, 517 (6th Cir. 2009).

What is more, Korley has lived in Accra before.  When he studied at the University of Ghana in Accra, he advocated for changes to the rules of succession.  Yet he suffered no persecution, even after he served as President of the Dagbon Youth Association, the "main goal" of which "was to deliver Dagbon from illiteracy rule and promote development."  A.R. 231.  "The Abudus in the university were aware of [Korley's] political" activities and "opposed [his] campaign," but they did not take action against him other than making "some abusive remarks."  A.R. 231; *see Atugah v. Holder*, 321 F. App'x 431, 438 (6th Cir. 2009) (petitioner could avoid future harm by relocating

- 4 -

within Kenya in part because "while he was at school in Nairobi, eight hours away from his home village, he did not encounter any problems").

Korley tries to distinguish his circumstances from his cousins' situations, noting that he has pursued higher education and publicly supported his uncle's position on the succession rules. His cousins, by contrast, work as subsistence farmers, and there "was no testimony whatsoever that [his cousins] had ever embraced [their father's] political opinion[s]." Korley Br. at 15. Yet this comparison makes no difference if, as we have shown, Korley has no fear of persecution in Accra.

Korley critiques the Board's relocation analysis as "cryptic" and "conclusory." Korley Br. at 21. Invoking two Eighth Circuit opinions, he claims the Board's analysis must "track the decision making format created by [Department of Homeland Security] regulations." Korley Br. at 21; *see Yang v. Gonzales*, 427 F.3d 1117 (8th Cir. 2005); *Hagi-Salad v. Ashcroft*, 359 F.3d 1044 (8th Cir. 2004). Nothing in those decisions, however, demands that the Board (or the IJ) formally recite the § 208.13(b)(3) factors. The regulation, in point of fact, acknowledges that the listed "factors may, or may not, be relevant, depending on all the circumstances of the case." 8 C.F.R. § 208.13(b)(3). The agency considered the relevant factors.

*Yang* and *Hagi-Salad* also do not help Korley on the merits. Unlike those petitioners, Korley bears the burden of proving he could not reasonably relocate within his home country. In *Yang*, the alleged persecution was government-sponsored, giving the petitioner a rebuttable presumption that internal relocation would be unreasonable. 8 C.F.R. § 208.13(b)(3)(ii); *see Yang*, 427 F.3d at 1122.

In *Hagi-Salad*, the Board failed to answer whether the petitioner had faced past persecution, leaving it unclear who bore the burden regarding internal relocation: the petitioner or the government. 359 F.3d at 1047; *see* 8 C.F.R. § 208.13(b)(3)(ii). The *Hagi-Salad* panel remanded the case to the agency to examine that question, 359 F.3d at 1049, a question not presented here.

The same factual predicates of Korley's future-persecution claim underlie his claims for withholding of removal and relief under the Convention Against Torture. Just as the relocation option to Accra defeats his future-persecution claim, so it also defeats these claims. 8 C.F.R. § 1208.16(b)(2), (c)(3)(ii); *Seydy v. Holder*, No. 09-3822, 2011 WL 111735 (6th Cir. Jan. 13, 2011); *see also Ramaj v. Gonzales*, 466 F.3d 520, 532 (6th Cir. 2006).

III.

For these reasons, we deny the petition for review.