NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0454n.06

Case No. 19-4033

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 04, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JUAN CARLOS ROGEL-RODRIGUEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE: GIBBONS, GRIFFIN, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Credibility determinations are central to our system of immigration enforcement. Here, an Immigration Judge found Juan Carlos Rogel-Rodriguez not credible and thus denied his request for asylum, withholding of removal, and protection under the Convention Against Torture. Because substantial evidence supports that finding, we deny the petition for review.

I.

Rogel-Rodriguez illegally entered the United States in the summer of 2018. After he was apprehended, he told a border patrol officer that he left El Salvador "to come work" in the United States. A.R. 1295. He also said that he did not believe he would be harmed if he returned to El Salvador.

Later that summer, Rogel-Rodriguez applied for asylum and in the process offered a new story about why he had left El Salvador. He said that earlier that spring he had seen what looked

like a drug deal go down between three police officers and gang members from MS-13. A month later, the three police officers purportedly stopped him while he was walking home, punched him in the stomach, and threatened to kill him and his family if he told "anybody about what [he] saw." A.R. 300. Two weeks after that, the police officers allegedly stopped him again, knocked him to the ground, pointed a gun at his head, and told him that they would kill him. During this incident, he says, the officers also broke his national identification card. According to Rogel-Rodriguez, he then rested for two weeks, obtained a new identification card, and left El Salvador the next day.

After a hearing, an Immigration Judge found Rogel-Rodriguez's new story not credible and denied his application for asylum, withholding of removal, and Convention Against Torture relief. The Board of Immigration Appeals affirmed, and this petition for review followed.

## II.

Rogel-Rodriguez challenges his immigration proceedings on two grounds: (1) that the Immigration Judge wrongly found him not credible, and (2) that he was entitled to relief under the Convention Against Torture. Neither challenge has merit.

## A.

Start with credibility. An adverse credibility determination is often "fatal to claims for asylum and relief from removal, preventing such claims from being considered on their merits." *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014). Credibility determinations are findings of fact reviewed under the substantial evidence standard. *Marikasi v. Lynch*, 840 F.3d 281, 287 (6th Cir. 2016). Thus, we must uphold such findings "unless any reasonable adjudicator would be compelled to make a contrary conclusion." *Slyusar*, 740 F.3d at 1073.[1]

---

[1] In his argument headings, Rogel-Rodriguez frames his credibility challenge as arising under the Due Process Clause. But he does not develop this argument and instead briefs his credibility arguments as though they are administrative. Thus, any distinct claim for relief under the Due Process Clause is forfeited. *See Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016).

The Immigration Judge found Rogel-Rodriguez not credible based on the "totality of the circumstances." 8 U.S.C. § 1158(b)(1)(B)(iii). Although the Immigration Judge cited numerous bases for his credibility finding, two key inconsistencies show why substantial evidence supports that finding.

First, Rogel-Rodriguez changed his story after being detained. Again, he initially told immigration officials that he entered the United States "to come work." A.R. 1295. But he then insisted that he fled El Salvador to avoid being killed by the three police officers. Given these "conflicting statements," the Immigration Judge (and the Board) had substantial evidence to find him not credible. *Nolasco-Gonzalez v. Barr*, 769 F. App'x 318, 320 (6th Cir. 2019); *see also Bi Qing Zheng v. Lynch*, 819 F.3d 287, 295–96 (6th Cir. 2016) (upholding adverse credibility determination when Immigration Judge relied on inconsistent statements).

Rogel-Rodriguez attributes these inconsistencies to a mere translation error. But our court has said that translation errors will undermine a credibility finding only when there's a "strong indication" that such an error occurred. *Marouf v. Lynch*, 811 F.3d 174, 182 (6th Cir. 2016) (cleaned up). And here, Rogel-Rodriguez offers only his own testimony that he never said that he came to the United States just to work. This evidence would hardly "*compel* a reasonable adjudicator to disagree with the [Immigration Judge's] finding." *Bi Qing Zheng*, 819 F.3d at 296 (emphasis added); *see also Nolasco-Gonzalez,* 769 F. App'x at 320–21.

Second, documentary evidence contradicts Rogel-Rodriguez's timeline of the alleged assaults. Rogel-Rodriguez testified that his national identification card was broken during the second attack (on June 10), that he soon obtained a replacement card (on June 26), and that he fled El Salvador the next day. But Rogel-Rodriguez's identification card shows that it was issued on

May 15—well before either of the alleged assaults (on May 27 and June 10). The Immigration Judge found that this discrepancy seriously undermined Rogel-Rodriguez's credibility.

Rogel-Rodriguez says that the Immigration Judge placed too much weight on a "trivial" discrepancy in a foreign document. But far from trivial, this discrepancy goes to the heart of Rogel-Rodriguez's claim. If he obtained a new identification card before the alleged assaults occurred, that fact casts doubt on the truth of his entire narrative. And in any event, the REAL ID Act permits a fact finder to "base an adverse credibility determination on an inconsistency, regardless of whether the inconsistency goes to the 'heart of the claim.'" *Marikasi*, 840 F.3d at 287 n.1 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). While Rogel-Rodriguez claims the issue date on the card was a clerical error, he provides no evidence of this. Instead, he offers only speculation on this point, and speculation is not enough to overturn an adverse credibility finding. *Nolasco-Gonzalez*, 769 F. App'x at 321.

Finally, Rogel-Rodriguez argues that the Immigration Judge's conclusions stemmed from "bias" or "prejudice." But Rogel-Rodriguez's only evidence for this claim is the fact that the Immigration Judge viewed various aspects of his testimony as implausible. And federal law *requires* Immigration Judges to evaluate the plausibility of immigrants' stories. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (instructing Immigration Judges to consider "the inherent plausibility of the applicant's or witness's account"). Without more, Rogel-Rodriguez cannot show bias or prejudice. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) (petitioner's "claim of bias appears to stem from her misunderstanding of the burden of proof").

In sum, substantial evidence supported the Immigration Judge's credibility determination.

B.

Rogel-Rodriguez also challenges the denial of relief under the Convention Against Torture. To obtain relief on this claim, he must show that "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Again, we review all factual findings for substantial evidence. *Zhao v. Holder*, 569 F.3d 238, 247 (6th Cir. 2009). And because the Immigration Judge found him not credible, Rogel-Rodriguez cannot rely on his *own* testimony to show a future likelihood of torture.

Rogel-Rodriguez emphasizes two other pieces of evidence in support of his claim: declarations submitted by his mother and sister. But these declarations cannot alone establish that Rogel-Rodriguez is likely to be tortured if returned to El Salvador because they mostly repeat Rogel-Rodriguez's non-credible account based on hearsay. *See Nolasco-Gonzalez*, 769 F. App'x at 322 (rejecting two declarations where "neither appears to be based on personal knowledge"). At best, his mother's declaration also alleges that three police officers approached her in the fall of 2018 and told her that "they had better not see [Rogel-Rodriguez's] face again or they would complete what they started the last time they saw him." A.R. 1172. But this testimony shows only that Rogel-Rodriguez might be tortured if he returns to this particular community, not if he returns somewhere else in El Salvador. *See Korley v. Holder*, 425 F. App'x 485, 487–88 (6th Cir. 2011); 8 C.F.R. § 1208.16(c)(3)(ii).

What's more, the Immigration Judge denied relief under the Convention Against Torture on several grounds, including that Rogel-Rodriguez had failed to prove: (1) that the harassing officers could find him if he moved elsewhere in El Salvador; (2) that any police misconduct would rise to the level of torture if it did occur; and (3) that any misconduct would be carried out "with the consent or acquiescence of" the government. *See* 8 C.F.R. § 1208.18(a)(1). And none of

Rogel-Rodriguez's documentary evidence rebuts these findings, which independently undermine his claim for relief. *See In re J-F-F*, 23 I. & N. Dec. 912, 917–18 (A.G. 2006) (holding that the petitioner must prove each step in a hypothetical chain of events leading to torture by a preponderance of the evidence). In the end, Rogel-Rodriguez has failed to offer evidence that compels reversal of the Immigration Judge's adverse determination. *See El-Moussa*, 569 F.3d at 255–56.

We deny the petition for review.